IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| United States of America | ) | Cr. No.  8:02-324-HMH |
| | ) | C/A No. 8:05-1494-HMH |
| vs. | ) | |
| | ) | **ORDER** |
| A.E. Williamson, Jr., | ) | |
| | ) | |
| Movant. | ) | |

This matter is before the court on A.E. Williamson Jr.'s ("Williamson") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2005). The Government filed a response to Williamson's motion, to which Williamson replied on August 22, 2005. After a thorough review of the facts and pertinent law, the court dismisses Williamson's § 2255 motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2002, Williamson was convicted on three counts: (1) possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and less than 50 kilograms of marijuana and aiding and abetting in the commission of the offense in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count 1"); (2) knowingly using and carrying a firearm during and in relation to and in furtherance of a drug trafficking crime and aiding and abetting in the commission of the offense in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 ("Count 2"), and (3) being a felon in possession of firearms (a Colt .38 caliber pistol, a Smith & Wesson .40 caliber pistol, a Bohmische 7.65 caliber pistol, a Cobray SWD 9 mm pistol, and a Bushmaster .223 caliber

1

rifle), all of which had been transported in interstate commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count 3"). On September 16, 2002, Williamson was sentenced to life imprisonment as to Count 2 and three hundred and sixty (360) months' imprisonment as to Counts 1 and 3, all to be served concurrently.

Williamson appealed his conviction and sentence, and the United States Court of Appeals for the Fourth Circuit affirmed on January 22, 2004. United States v. Williamson, No. 02-4794, 2004 WL 99051, at *1 (4th Cir. Jan. 22, 2004) (unpublished). Williamson filed a petition for certiorari, which was denied by the United States Supreme Court on May 24, 2004.

On May 23, 2005,[1] Williamson filed the instant § 2255 motion, in which he asserts seventeen claims for relief. Claims one through eight involve allegations of ineffective assistance of counsel; claim nine alleges that Williamson was denied the right to self-representation; claim ten addresses the "Denial of [a] Holloway Inquiry;" claims eleven through fourteen regard "prosecutorial misconduct;" claim fifteen sets forth allegations of ineffective assistance of appellate counsel; claim sixteen asserts that Williamson was improperly sentenced on Count 1; and claim seventeen contends that Williamson is actually innocent of the enhancements under 18 U.S.C.A. § 3559(c) (West 2000). (Mot.; id. Ex. C (Williamson Aff.); Am. Mot.)

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

## II. DISCUSSION OF THE LAW

### 1. Claims One Through Eight: Ineffective Assistance of Trial Counsel

Williamson alleges that he received ineffective assistance from his trial attorney, Steve Sumner ("Sumner"), in eight separate claims.

In order to successfully challenge a sentence on the basis of ineffective assistance of counsel, Williamson must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

As to claims one and six, Williamson argues that Sumner labored under a conflict of interest because of his relationship with an ATF agent and his loyalty to the ATF agency. (Mot. 10-14, 48-59.) A criminal defendant is guaranteed the right to effective assistance of counsel at all stages of the proceedings against him. This includes the right to representation that is free from a conflict of interest. To establish a violation of the Sixth Amendment, however, a movant must show that "an actual conflict of interest adversely affect his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).

Williamson's general allegations that Sumner's relationship with Agent Peterman or his former employment with the ATF agency created a conflict of interest fail to establish the existence of an actual conflict of interest. In his affidavit, Sumner avers that ATF Agent Peterman is a friend and that Sumner was employed by ATF some years ago. Sumner further states: "Frankly, I do not recall the role that Agent Peterman played in the charges against

Mr. Williams; however, this in no way affected my representation of Mr. Williamson." (Gov't Ans. (Affidavit of Steve Sumner).) Furthermore, even if an actual conflict of interest existed, Williamson fails to show that this alleged conflict adversely affected Sumner's performance. Williamson cannot point to any legal or factual basis that Sumner either failed to argue or argued so inadequately that the results of his criminal proceedings would have been different. See infra. For these reasons, claims one and six are without merit.

As to claim two, Williamson contends that Sumner was unprepared for the May 6, 2002, suppression hearing. (Mot. 14-26.) Williamson, however, does not point to any legal argument or evidence Sumner failed to use that would have caused the outcome of the suppression hearing to have been different. In addition, the court has reviewed the transcript of the suppression hearing and finds that Sumner's performance clearly falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Sumner cross-examined each of the Government's witnesses and more than adequately presented Williamson's theory as to why the motion for suppression should be granted. Williamson's theory supporting the suppression motion simply was inadequate to respond to the Government's evidence establishing that the stop and arrest of Williams was in accordance with the law. Finally, a movant cannot "recast, under the guise of collateral attack, questions fully considered" on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). On appeal, Williamson argued that the information gained from the stop of his vehicle and arrest violated the Fourth Amendment. The Fourth Circuit Court of Appeals rejected this argument. Williamson, 2004 WL 99051, at *1. Williamson should not be

4

permitted to re-litigate these issues on collateral review. For all the reasons provided above, the court finds claim two without merit.

As to claim three, Williamson asserts that Sumner failed to negotiate a favorable plea agreement. (Mot. 26-32.) Specifically, Williamson contends that Sumner told him the Government would guarantee a prison sentence of ten to twelve years for pleading guilty. However, the offered plea agreement did not contain a promise of a sentence of ten to twelve years. Williamson asserts, moreover, that the Government refused to offer any agreement more favorable to Williamson. (Reply Gov't Ans. 13-14.)

These allegations fail to show that Sumner's performance was either deficient or prejudicial to Williamson. Williamson fails to point to any legal or factual basis Sumner failed to raise in order to obtain a better plea offer for his client. In addition, Williamson fails to establish that the Government was willing to offer him a more favorable plea agreement and, therefore, he cannot establish that he was prejudiced by any deficient performance on the part of Sumner. Claim three, therefore, is without merit.

As to claim four, Williamson alleges that Sumner failed to present his conflict of interest to the court. (Mot. 32-39.) For the same reasons the court finds claims one and six without merit, claim four fails as well.

As to claim five, Williamson argues that Sumner failed to move to dismiss the Indictment based on a violation of the Speedy Trial Act. Particularly, Williamson states that Sumner failed to submit into evidence a transcript of a state forfeiture proceeding which allegedly proves Williamson's theory of collusion between state and federal prosecutors to hold him in state custody until he was charged with a federal crime. (Mot. 39-48.) Williamson raised this argument on direct appeal. The Fourth Circuit found no violation of

the Speedy Trial Act. Williamson, 2004 WL 99051, at *2. Williamson cannot "recast, under the guise of collateral attack, questions fully considered" on direct appeal. Boeckenhaupt, 537 F.2d at 1183. For this reason and those stated in the Government's Answer on pages 13-16, claim five is without merit.

As to claim seven, Williamson states that Sumner failed to assist Williamson in filing a motion for a new trial. (Mot. 59-65.) Even assuming that Sumner failed to assist Williamson in filing a motion for a new trial, Williamson fails to point to any grounds demonstrating that, if a motion for a new trial had been filed, the outcome of his criminal proceedings would have been different. Stated another way, Williamson fails to establish that he was prejudiced by Sumner's alleged error. Claim seven is therefore without merit.

As to claim eight, Williamson contends that Sumner failed to take advantage of an affirmative defense available under 18 U.S.C. § 3559(c) regarding "non-qualifying" prior convictions. (Mot. 65-76.) This claim fails because Williamson cannot demonstrate that his attorney was deficient in failing to raise this affirmative defense or that he was prejudiced by his attorney's failure. Aside from his self-serving affidavit contending that his prior convictions are "non-qualifying" under § 3559(c), Williamson provides no evidence to support his claims. In addition, Williamson objected to the court's consideration of his prior convictions at sentencing. Williamson argued that the Government failed to carry its burden to show that the convictions properly qualified as prior convictions under § 3559(c). The court considered Williamson's objections in this regard and found that the relevant prior convictions supported the § 3559(c) enhancement. Williamson also raised this argument on appeal and the Fourth Circuit found it to be meritless. Williamson, 2004 WL 99051, at *1.

6

Williamson may not "recast, under the guise of collateral attack, claims fully considered" on direct appeal. Boeckenhaupt, 537 F.2d at 1183.

For all the reasons provided above, Williamson fails to show that Sumner's performance was unreasonable in light of prevailing professional norms. Even assuming that Sumner's conduct was somehow deficient, however, Williamson fails to demonstrate that he was prejudiced by his attorney's actions. That is, Williamson fails to establish that, absent any error on the part of Sumner, the results of his criminal proceedings would have been different. Claims one through eight, therefore, are without merit.

### 2. Claim Nine: Denial of the Right to Self-Representation

Williamson asserts that the court coerced him into waiving his right to self-representation. This claim is belied by the record. At the May 13, 2002, hearing, Williamson asked the court if he could represent himself. The following colloquy ensued:

> THE COURT: I strongly advise against that. I cannot force you to have an attorney to represent you because you do have a right to represent yourself if you wish to do so. . . . When a person has a simple legal matter, they might [be able to] take care of it themselves. When they're facing a serious legal matter, such as this, they're better served by having an attorney represent them. And this is a serious matter. And I would strongly advise you to be represented by an attorney. But I can't force that on you.
>
> THE DEFENDANT: Well, I can't see the difference in him getting me three or four life sentences and me getting me three or four life sentences.
>
> THE COURT: You want to represent yourself?
>
> THE DEFENDANT: Yes, sir. . . .
>
> THE COURT: I'll let you represent yourself. . . .
>
> THE DEFENDANT: I understand the consequences. . . .
>
> THE COURT: But I'm going to require Mr. Sumner to sit there with you. . . . – if you want to ask him a question, he'll be there.

7

> . . . .
>
> THE DEFENDANT: . . . that's still defeating my purpose. I don't want Mr. Sumner as my counsel.
>
> THE COURT: . . . if you don't want him to say anything, he won't say anything. But I'm requiring him to sit there and be there.
>
> THE DEFENDANT: Well, if you require him to do that, let him represent me because it's the same difference. He knows everything else that's going on.
>
> . . . .
>
> THE COURT: Let's clarify this. Do you want him to represent you or not? He's going to be sitting at that table.
>
> THE DEFENDANT: If he's going to be at the table, let him represent me.
>
> THE COURT: All right. He'll represent you.
>
> THE DEFENDANT: But if I'm going to be there by myself, I'll represent myself.
>
> THE COURT: You are not going to be there by yourself, I'm going to require him to be there. Because even though you say you want to represent yourself and you think you can, I don't think you can. But I can't force that on you. Because you're right, the law requires a defendant who wants to represent himself and not be represented, that he has that right.

(Mot. Hr'g Tr. 11-13.) As the colloquy above makes abundantly clear, Williamson was not denied the right to represent himself. Thus, claim nine is without merit.

### 3. Claim Ten: "Denial of [a] Holloway Inquiry"

Williamson next argues that, after informing the court about Sumner's alleged conflict of interest, the court failed to hold a hearing pursuant to Holloway v. Arkansas, 435 U.S. 475 (1978), in violation of his Sixth Amendment rights. Holloway, however, is inapposite to this case. Unlike the attorney in Holloway, Sumner did not move for appointment of separate counsel due his inability to adequately represent Williamson and, in particular, cross-examine

8

key trial witnesses due to a conflict of interest. See Holloway, 435 U.S. at 484 (reversing district court's failure to conduct further inquiry into defense counsel's motion to appoint separate counsel for three co-defendants when counsel claimed joint representation hampered his ability to represent any of the defendants adequately, and in particular, counsel could not cross-examine any of the co-defendants from whom he had confidential information); see also Mickens v. Taylor, 240 F.3d 348, 357 (4th Cir. 2001) (explaining that Holloway dealt with a specific circumstance in which defense counsel raised objection to joint representation because, in particular, he could not cross-examine any of the co-defendants from whom he had confidential information). For this reason and those reasons provided as to claims one and six, claim ten is without merit.

### 4. Claims Eleven Through Fourteen: Prosecutorial Misconduct

Williamson contends that Assistant United States Attorneys Lance Crick and Scott Schools committed prosecutorial misconduct. Specifically, with regard to the May 13, 2001, hearing, Williamson contends that AUSA Crick presented falsities in opposition to Williamson's motion to dismiss the Indictment pursuant to the Speedy Trial Act (claim eleven). Williamson argues that AUSA Crick colluded with state authorities to hold Williamson in state custody until the federal Government could indict Williamson on federal charges. Williamson presented this same argument to the court before trial and on appeal to the Fourth Circuit. However, Williamson failed to include the state forfeiture hearing transcript in those prior proceedings. Williamson argues that this transcript conclusively demonstrates that AUSA Crick and state authorities were in collusion with one another. The court has reviewed the state forfeiture hearing transcript and finds no evidence that Williamson's state detention was primarily based upon the federal Government's intent to

9

prosecute. The state forfeiture hearing transcript demonstrates, rather, that Williamson was legitimately in custody on state charges and for state forfeiture proceedings. (Mot. Ex. A (Tr. State Forfeiture Hr'g).) For this reason and those discussed with respect to claim five, claim eleven is without merit.

Williamson next asserts that, during closing arguments, AUSA Crick prejudicially suggested that the jury could infer Williamson was distributing methamphetamine from the testimony of Lisa Bayne and David Summers (claim twelve), and AUSA Schools improperly commented on the truthfulness of two Government witnesses (claim thirteen) and on Williamson's laughter during the trial (claim fourteen).

As to allegations of prosecutorial misconduct related to comments made at trial, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted); United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990) (stating that there no prosecutorial misconduct when behavior did not "prejudicially affect[] the defendant's substantial rights so as to deprive the defendant of a fair trial" (internal quotation marks omitted)). In making this determination, the Fourth Circuit has considered the following four factors:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof, and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983).

Overwhelming evidence presented at trial demonstrated that Williamson was distributing methamphetamine. (Trial Tr. 130, 132, 134, 157, 157, 159-61, 164-66, 178-79.)

10

Thus, any inference that Williamson was distributing methamphetamine to be drawn from AUSA Crick's comment that "You have heard testimony from Lisa Bayne and David Summers that these materials were being sold after they were produced" (Mot. 100), did not have a tendency to mislead the jury or "prejudicially affect[] the defendant's substantial rights so as to deprive the defendant of a fair trial." Chorman, 910 F.2d at 103 (internal quotation marks omitted). With respect to AUSA Schools' comments that he believed certain Government witnesses were telling the truth, this conduct did not materially affect the verdict either. The remarks were isolated and, when weighed against the overwhelming evidence against Williamson, did not "prejudicially affect[] the defendant's substantial rights so as to deprive the defendant of a fair trial." Id. (internal quotation marks omitted). Finally, by referring to Williamson's laughter during trial, AUSA Schools did not directly comment on Williamson's failure to testify or present evidence. Indirect remarks related to a defendant's failure to testify are improper only if "the language used manifestly intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Whitehead, 618 F.2d 523, 527 (4th Cir. 1980) (internal quotation marks omitted). The Fourth Circuit rejected a habeas claim based on a prosecutor's allegedly improper comments regarding the defendant's demeanor during trial, given the "wide latitude accorded counsel in making closing arguments" and "that the prosecutor['s] remarks, read in context, did not constitute an improper comment on [the defendant's] failure to testify or otherwise infringe upon [the defendant's] constitutional rights." Oken v. Corcoran, 220 F.3d 259, 269-70 & 270 n.7 (4th Cir. 2000) (internal quotation marks omitted). Similarly, the court finds that AUSA Schools' comments regarding Williamson's demeanor during trial did not constitute an improper comment regarding

11

Williamson's failure to testify. For the reasons provided above, claims eleven through fourteen are without merit.

### 5. Claim 15: Ineffective Assistance of Appellate Counsel

Williamson alleges that his appellate counsel was ineffective for failing to (a) correctly argue Williamson's Fourth Amendment claim, (b) communicate with Williamson, (c) respond to the Government's appellate brief, (d) request a hearing, (e) raise the correct issue in the petition for certiorari, (f) turn over Williamson's trial records, (g) correctly challenge his sentence under § 3559(c), and (h) raise the issues presented in claims nine through ten and twelve through fourteen. With respect to these grounds, even if the conduct of Williamson's appellate counsel fell below prevailing professional norms, Williamson fails to show that he was prejudiced by his attorney's conduct, as explained in this order. For this reason, the court finds claim fifteen without merit.

### 6. Claim 16: Sentence on Count 1

Williamson contends that the court should not have sentenced him to thirty years on Count 1. Williamson argues that, in returning a general verdict, the jury could have found him guilty of only distributing marijuana, which carries a less severe sentence than that which he received on Count 1. Claim sixteen is without merit because any error in this respect is harmless, given that Williamson received a life sentence on Count 2 in compliance with 18 U.S.C. § 3559(c) that runs concurrent with his sentence on Count 1.

### 7. Claim 17: Actual Innocence

Williamson claims that he was actually innocent of the sentencing enhancements under 18 U.S.C. § 3559(c). For the reasons provided above with respect to claim eight and those stated in the Government's Answer on pages 29-31, this claim is without merit.

In conclusion, the court finds that, for the reasons provided above, Williamson's § 2255 petition is without merit.

Therefore, it is

**ORDERED** that Williamson's § 2255 motion is dismissed.

**IT IS SO ORDERED.**

s/ Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
September 1, 2005

### NOTICE OF RIGHT TO APPEAL

The movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.